Good morning and may it please the court, counsel. I'm Kenneth Chaik and I represent the appellant in this matter. I'd like to begin with a procedural point, which is that the appellant was found to have pled a cause of action alleging Title IX liability, surviving the exhaustive Rule 12b6 analysis that typically accompanies cases like this. I'd also like to point out that in the district court's order dismissing the case on summary judgment, the court acknowledged that Thomas Klocke's sex played a role in the sanction that was imposed upon him. Mindful that the court is now conducting a de novo review of the summary judgment record, giving the evidence the light most favorable to the case that was recently confirmed in the IAF v. Lewisville school district case. I want to, to a degree, jump around a little bit and talk about some specific facts, in particular some facts and evidence that the court below ignored in granting summary judgment. And in doing so, I'd like to begin at the end of the pertinent fact record and call the Court's attention to the record, Excerpt 4962, which is the where the investigator slash prosecutor slash judge of the disciplinary action, after being ordered by his superior, the dean of students and the acting Title IX coordinator to exclude Thomas Klocke from class, stated on May 24th of 2016 in an email updating Dean Snow, I'm not sure I have enough here to keep him out of class. The district court's order below doesn't even acknowledge the existence of that evidence, let alone the significance of the evidence in this case. And it is significant because it reflects a lack of any meaningful evidence to justify the sanction that was imposed upon Thomas Klocke. I'd like to then go back to the beginning of the factual pattern, if you will, and call the Court's attention to the record 4714 and 15 and 3892 and 93. These record excerpts are excerpts of testimony given by Dean Snow, the then acting Title IX coordinator for student-against-student complaints at the time. And before knowing about any allegations in a case or anything else, she testified under oath in that capacity that I just identified, that she received the complaint against Thomas Klocke and considered it both an allegation of sexual harassment and an allegation of sexual misconduct. And based solely upon those allegations, she decided to implement a disciplinary sanction in the form of excluding Thomas Klocke from participation in or denying him the benefits of education programming or activity. So there can be no dispute that in the record below there was evidence not only of the fact that there was not enough to support the sanction that was imposed upon Thomas Klocke, but that it was a sanction that involved his exclusion from participation in or denying him the benefits of education programming. And we know, based upon at least this Court's recognition of the claim theories, Title IX claim theories that have been set forth by the Second Circuit in the Yusuf case and the Doe v. Columbia case, that gender bias as a motivation can be shown when there is evidentiary weakness behind the disciplinary finding, procedural flaws, or patterns of decisionmaking showing gender of the accused as a motivating factor. And in Plummer, this Court reminded us that a federally funded institution can be held liable for imposing discipline where gender is a motivating factor, recognizing at least that the Second Circuit has approved of the claim theories of selective enforcement and erroneous outcome. And those are the two theories that we focus on in our briefing in this case. And I'd also like to point out another very significant fact, because Doe v. Columbia makes it significant, and that is that there is ample evidence in the record in the form of notes from the investigator-slash-prosecutor-slash-adjudicator, Mr. Moore, that Thomas Clocke vehemently denied the allegations against him. And that is an important fact when looking at the questions of erroneous outcome and looking at selective enforcement of procedures, particularly given the fact that there was an acknowledged deviation procedurally from the university's mandatory Title IX complaint investigation process and procedures. It didn't happen at all. So we believe that the Court needs only to find in this case, while conducting a de novo review, that there was evidence casting articulable doubt on the accuracy of what we call the exclusion-deprivation decision, the sanction imposed upon Thomas Clocke. And we think that there was clearly evidence creating a fact question under the well-pled erroneous outcome theory in our complaint, and also showing that regardless of whether Thomas Clocke was guilty or innocent, and the District Court, by the way, presumed that Thomas Clocke was responsible for the conduct that he was Thomas Clocke denied it, but there was no corroborating evidence that it occurred at all. And so that alone, if we understand the holding in the Doe v. Columbia case, would suggest that there was articulable doubt. Moreover, as it pertains to the sanction itself, the record excerpt that I just mentioned before, which was the May 24th, 2016, email of Mr. Moore saying, I don't have enough to keep him out of class, also reveals that there was articulable doubt. There was no evidence to support the actual sanction that was imposed. There was no threat found. He concluded that there was no threat found. Roberts. When you're talking about facts, on the issue of just gender bias being what motivated the discipline, what's your best evidence that female students are not disciplined as strictly for similar behavior? So let me begin by referring the Court to the testimony of Dan Moore, which was that at this particular university, in the event of even a heated conflict between students in class, the typical disciplinary action was to issue a mutual no-contact order so the two students could go back to class and continue on. And as I think we've argued quite clearly, those two students had in effect imposed such an arrangement upon themselves, given that this event occurred early in the proceeding and then they were in class together for four hours later. But the best evidence, Judge, is that we requested in discovery and obtained from the university the disciplinary files of students who had been accused of harassment, sexual misconduct, and threats. And we were given 69 cases. We cited to that record extensively in our briefing. And what that evidence establishes quite clearly is that only accused male students have ever suffered a sanction, a disciplinary sanction, in the form of an exclusion from the educational programming or a deprivation of the benefits of the same. Not a single female. There were nine examples of females who had been disciplined under those circumstances. Roberts. What out of the nine, because you know them so closely, which is the one that is most analogous in terms of the alleged behavior? Instead of just saying nine, tell me the one that you would point to as the starkest contradiction. Well, I think the one involving the reference to a dyke bitch would be the closest one in terms of overall facts. But I would respectfully suggest to the Court that we are left without guidance in the case law involving disciplinary actions alleging Title IX violations in terms of what do you have to show as a comparative case. I would respectfully submit to the Court that you will never be able to find an exact fact pattern. And so to impose a burden or an obligation upon a claimant, given the guidance of the Supreme Court that in these Title IX cases we are to liberally fashion remedies based upon the variant facts that occur, you would never find an exact situation. And so we believe, and we were allowed to pursue discovery below, on the discipline students, male and female, who had been accused of, investigated for, and disciplined for alleged sexual misconduct, harassment, because they claimed it was a mere harassment case, and threat. And so I think that's the critical threshold. The underlying details of those particular cases, trying to distinguish them, I think those are fact questions, ultimately, that a jury could say, you know, hey, do we consider these to be comparative, but I don't think we can determine whether they're comparative as a matter of law because there's no basis upon which to do so. And I'd like, then, against that backdrop, to focus on some additional testimony in the record from Mr. Moore. And this testimony, in our view, is very critical because it reflects what Mr. Moore was thinking at the time that he was engaged in the management of this disciplinary case, as opposed to his after or post-litigation testimony where he was trying to explain what he meant, et cetera. He clearly testified that when he had been ordered by Dean Snow to implement this exclusion deprivation sanction, keeping Thomas out of class and from benefiting from educational programming, that he understood that that's exactly what was happening to Thomas, and he agreed that Thomas did suffer that denial of the benefits of educational programming. And I encourage the Court to look at his testimony at 51-36 of the record. And I can't emphasize enough, back to your question, Judge Higginson, the threshold point, which is that Mr. Moore acknowledged that mutual no-contact orders allowing class participation but separation of the students in the class was the norm in cases involving what he said were heated in-class conflicts between students. He agreed this was not even a heated in-class conflict. He acknowledged that there was a dispute as to what actually transpired, no corroborating evidence, no witnesses. There was no observed disruption at all in the classroom. And as I indicated, the students remained in the classroom together without incident of any kind for several hours thereafter. And if the Court looks at the record 51-59 and 60, the Court will find his testimony saying he'd never seen a situation like this where there was a removal of a student from the educational process. But again, I mean, we not only showed that this sanction was imposed upon Thomas and it was an exclusion, but that no female had ever suffered such a disciplinary result in a case involving harassment, sexual misconduct, or threat. And finally, I want to go back to the comments of Mr. Moore in his May 24th email, because that email chain with Dean Snow is revealing for a couple of other reasons. First, in that email chain, Mr. Moore acknowledged that the bottom line is that the students were giving different accounts of what happened, and he acknowledged that Thomas Clocke had in fact told him that what transpired that morning was that he had in effect been hit on by the other student. And I've often asked myself the question, how is it that this was a situation where two students who didn't know each other at all find themselves sitting next to each other in a classroom, and without any kind of provocation whatsoever, or identified provocation, Thomas Clocke had just up and decided to make anti-gay slurs against somebody he doesn't even know? And what I mean by that is it suggests to me that something transpired between these students that caused these students to have some kind of an interaction. What happened thereafter, we don't know, but a jury should have been entitled to review the evidence and decide whether or not there was an erroneous outcome based upon the facts, as opposed to accepting that Thomas Clocke was, as he was prejudged, guilty as charged. Your Honor, in closing, I'd just like to say that this is a case where the trial court usurped the function of a jury. There was abundant evidence in support of each of the elements of the recognized claim theories for Title IX liability. The court ignored much of that evidence and then weighed the evidence in a fashion that is reserved for a jury. We would ask the court, in conducting its de novo review, to respect that jury process and to reverse the dismissal of the case on summary judgment. And if the court is so inclined to grant summary judgment, render judgment, granting summary judgment, on the occurrence of at least the exclusion and deprivation from educational programming that took place, because we believe that was an undisputed fact supported by the overwhelming evidence. Thank you very much. Unless there's any questions, I'll take my seat. Thank you. May it please the Court. All Title IX causes of action, plaintiff advances, accept the retaliation claim, require plaintiff to demonstrate a fact issue that something that UTA did was based on sex. And there is no evidence supporting that there is a fact issue on the sex bias issue. What I'd like to do is go through each of the Title IX causes of action and demonstrate why the district court got it right in dismissing the case. I'll explain the elements necessary and why there is no fact issue here. I'll start with the erroneous outcome claim, then go to the selective enforcement claim, what they call the facial violation claim that they asked this court to adopt and create, and then the retaliation claim. So first, with respect to the erroneous outcome claim, there are two elements that other courts have recognized. The first is that the disciplined student was innocent and wrongly found to have committed the offense. And the second is that sex bias was the motivating factor of that erroneous decision. What the evidence in the record is, is that Dan Moore interviewed Clockie, he interviewed Watson, he interviewed the neutral witness, Blake, and he interviewed Professor Long, spoke to Professor Long. There was a contemporaneous note, a contemporaneous e-mail, and a contemporaneous Facebook post. Moore found Watson to be credible, but in contrast, found Clockie's story to be, quote, far-fetched. And indeed, to reverse the district court on the erroneous outcome claim, this Court would actually have to believe that there's a fact issue in the record that the following occurred, that at 8 a.m. during class, Watson expressed a romantic interest in Clockie, that Clockie rejected that romantic interest, that Watson then said, I think you should leave, and then Watson framed Clockie, falsely alleging that he called him a faggot, said gays should die, and said that Watson should consider killing himself. Then Watson was such a good actor, he acted scared and fooled Professor Long, Heather Snow, and Dan Moore. This Court would have to find that there's evidence in the record suggesting that that actually occurred, casting doubt on the correctness of the decision. Then this Court would also have to find a fact issue on the second element, that Dan Moore was biased against males. Plaintiff can point to nothing in the record sufficient to establish a fact issue on either of those elements. The second cause of action I'll address is the selective enforcement claim. Courts that have adopted this cause of action require the plaintiff to prove that regardless of the student's guilt, the severity of the penalty or the decision to initiate the proceeding was affected by the student's gender. Courts require the plaintiff to show a comparator who was similarly situated but was treated better, and the record is devoid of any such evidence. Third. Well, before you move off that, because you say the record's devoid, but he says there are nine cases and then he specified the one that is the most pertinent comparator. So could you speak to that? Yes. We handle this in our brief and we have a bullet point paragraph for each of these nine students. None of those students, there's no evidence in the record that the complainant and the respondent in those cases shared the same class. They didn't have classes together. Only two of them were decided by Dan Moore, and under this circuit's precedent in the Title VII context, there's no reason it would be different here in the Title IX context. You require the same decision-maker. And with respect to what they say is the most analogous case, in that case there was a different decision-maker. That female student was unloading stuff from her car, and she parked in a parking spot she wasn't supposed to park in. And a staff member who did not identify herself as a staff member came up and berated the student and basically made the student cry, and in frustration the student called her a dyke bitch. That student was penalized and the student was found responsible. A record was created, and again, that was a different decision-maker. So even there, it's not a real comparator under this circuit's analysis, and the student was sanctioned, and the student did not have a class with the staff member. Now, Student 8, Student 31, and Student 32, who shared a class with the complainant, and these three male students were not prohibited from attending class. In footnote 19 on page 40 of their brief, they cite several student disciplinary cases. And what they say is, and what they said they repeated earlier, that all the students who were excluded from class were males, therefore UTA is biased. But I just gave you three that aren't. And they list in that footnote three males that were excluded, and we've got three males that weren't excluded. So if in six or seven of the cases, if half of them are excluded and half of them aren't, that's not evidence that there is a sex bias. And again, this circuit's standard is, and this gets to what Judge Higginson asked and also a comment that they made about, and what point they make in their brief about the similarly situated standard, that this Court says in Lee v. Kansas City that nearly identical does not mean identical, but it's got to be a nearly identical situation. And the law is the same decision maker, and there's no evidence sufficient to establish that here. Now, the third cause of action is what they ask you to create this new tort that they call the facial violation Title IX claim. No court has done so, and the reasoning in the Supreme Court case is implicitly reject that idea. And further, this is not the case to do so, even if you wanted to. The proposed new tort would have two elements. The first is that the student was denied participation in an educational program, denied the benefits of that program, or was subjected to discrimination in educational programming. And the second element would be that this was motivated by sex. There's no fact issue on either proposed element of this tort that this, that the appellant asked you to create. With respect to the first element, Clockie was permitted to complete the course and obtain the credits. UTA modified the class and allowed him to work with this group, work one-on-one with the professor, take the exams, and pass the class and ultimately graduate. And what Dan Moore talks about in his affidavit, and I think, you know, there was so much talk about the facts. I think 1979 in the record is where Dan Moore's affidavit begins. It's about 15 pages. All the key documents follow that in the exhibits to his affidavit. And then there's Heather Snow's, Charity's, Charity Stutzman, and Professor Long's affidavit. And when you read those, and you read Dan Moore's specifically, what he says is that he was balancing two competing concerns when he was sanctioning Clockie. On one hand, he thought that the conduct warranted the sanction that he gave, and he had a victim of bullying who had a genuine fear of Thomas Clockie. And he was trying to make sure that the classroom environment was safe for that bullying victim. On the other hand, he knew that Clockie was set to graduate that August. And so he was balancing those two concerns, and he ultimately decided on the sanction he decided, and that Clockie would be able to obtain the credits and work with his class, with his professor and his classmates in order to pass the class. And he did pass the class. But you're not denying that he's lost an educational benefit when he can't attend a class, right? No, I disagree. I think that there was a modification in the educational program. And I don't think, you know, for example, this may be a bad analogy, but let's say a football player takes a class on a Friday but has to travel a lot for football. Is he denied the educational benefit by working one-on-one with his professor and getting the education through some other means? I think the answer is no. Last, with respect to the retaliation claim, the plaintiff must show that Clockie participated in an activity protected by Title IX, that UTA took an adverse action against him because of that activity. The evidence shows, however, that UTA relaxed the restrictions placed upon Clockie after his alleged Title IX activity. And for that reason alone, that claim should fail. I'd like to briefly address another point that counsel made in his argument, and that is that he said that the evidence shows that essentially that Dan Moore broke from typicality in the interim measure and also in the sanction. And that's just not supported by the record. And if you look at footnote 14 in our brief, we have record citations and talk about that. That is just not true. That is not accurate. In closing... Remind me what the facts were of when Clockie goes to be interviewed. Was there a script involved? Or is that a disputed issue of fact? That is an uncontroverted fact, that Dan Moore testifies that he had... that when Dan Moore would ask questions of Clockie, he would look at a script. And indeed, I believe we have a citation to this in the Statement of Facts, that that script was produced in discovery. He had these notes he was going off of, and Dan Moore's... 1979 on the record, he talks about that. And Clockie didn't really... when Moore would ask him questions, he would just go back to the script and couldn't answer questions about his version. In closing, plaintiff's true criticism of Dan Moore's decision-making is that he could have handled the situation differently, but that's just not actionable under Title IX. Thank you. Thank you. A couple of brief points. First, to Judge Higginson's question, there is some dispute as to whether Thomas Clockie was reading off of a script, and as our briefing points out, Thomas Clockie showed up for this meeting with his father. His father was denied access to the meeting, and Thomas Clockie is no longer with us and can't explain this after the claim testimony from Mr. Moore in an affidavit, explaining what transpired on a completely undocumented basis. And so I would encourage the plaintiff... Absolutely, yes. I thought it would be all right for the father to be there, but the ground rules would have to change. If he's there, here's how this is going to play out. Mr. Clockie testified that he had to have a release signed by Thomas beforehand. They claimed that. Mr. Clockie testified that that was never explained, and so he was in fact denied and there was no explanation as to how he could have gotten into the room is what the record reflects. But I would like to mention that this idea that in order to survive the comparator test, if you will, you have to have the same decision-maker in every case, et cetera, there's just no law to support that. And the cases that the university relies upon are not Title IX disciplinary cases. And we do discuss this issue in our reply brief beginning at page 20, and I would encourage the Court to take a look at the cases that we've cited there, including the NACA v. McAllister College case and Doe v. Brown v. University. Those cases simply say that the comparative cases have to involve students who are similarly situated in material respects, and I would respectfully suggest that the way that they are comparable in material respects is that they are charged with code of conduct violations involving harassment, threat, or sexual misconduct. No, they did not. And they don't speak to the issue of... What is your best case that there can be a different decision-maker? I've never found a case that discusses the issue of a decision-maker in the Title IX disciplinary context. There's just no cases on that specific question. So I have no best case because it's never been discussed because it's never been a standard that's been imposed under the comparator analysis. The other couple of things that I do want to mention is that this is not a case that is second-guessing or criticizing Dan Moore's reasonableness or the wisdom of his decisions at all. This is a Title IX allegation alleging selective enforcement of procedures and erroneous outcome, recognized causes of action. And I take issue with something that my friend just stated, which is in order to prove innocent, that is not the standard that has been adopted in the case law. The Second Circuit has made clear that there simply has to be evidence that casts articulable doubt upon the accuracy of the conclusion, and in particular, the disciplinary decision. And I think that's important that we don't lose sight of that. And more importantly, and he didn't address this, in a selective enforcement case, innocence or guilt doesn't matter. You look at the severity of the punishment under the totality of the circumstances and look at whether or not the procedure itself, as selected by the person who imposed the discipline, was flawed in such a way as to result in an absolutely severe disproportionate type of punishment. It's undisputed here, based on the evidence I've already mentioned to the Court, that Dan Moore himself said this was unusual, it was not typical, it was severe, and it deprived this student, knowingly, of the benefits of educational programming. And so, in closing, again, I can't emphasize enough, the University is, in effect, asking this Court to impose a requirement that says that you have to show that females suffered a different type of disciplinary outcome in identical cases. It's not the law. It's never been the law. And that type of a requirement would deviate from the Supreme Court's admonition that in these Title IX cases, you're to fashion remedies that are reasonable based upon the facts and circumstances, and that achieve the purposes of Title IX, which is to prevent students from being deprived of their educational programming and benefit on a discriminatory basis. And we think there's As concluded by the district court itself, there was a nexus found by the district court between Thomas' sex and the disciplinary sanction he received. Thank you very much.